IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-0005** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **DANIEL RODRIGUEZ** | : | |

## MEMORANDUM

Presently before the court is defendant Daniel Rodriguez's ("Rodriguez") motion to suppress evidence. (Doc. 21). Rodriguez asserts that Officer Arlon Schools ("Officer Schools") of the Pennsylvania State University - Harrisburg ("PSU") campus police lacked jurisdiction to stop Rodriguez's vehicle on April 2, 2011. Rodriguez also contends that Officer Jeffrey LeVan ("Officer LeVan") of the Highspire Borough Police Department did not possess sufficient probable cause to search his vehicle. Rodriguez argues that any evidence found and seized from Mr. Rodriguez's person, vehicle, and property and any statements made by Mr. Rodriguez to law enforcement on and after April 2, 2011 must be suppressed. For the following reasons, the court will deny the motion.

I.   **Findings of Fact**[1]

On April 2, 2011, at approximately 5 a.m., Officer Schools[2] was returning to PSU's campus when he observed a 1998 Blue Kia Sephia sedan in the 600 block of Second Street in Highspire Borough. (Doc. 38, at 10). He observed the vehicle swerve into the center left turn lane without using a turn signal, swerve back into the right travel lane without using a turn signal, and then straddle the "fog line" on Second Street and Whitehouse Lane. (Id. at 11). Officer Schools communicated his observations over radio to Officer Jeffrey LeVan of the Highspire Borough Police Department. (Id. at 12; Doc. 28-1, at 21). At the time, Officer LeVan was parked at the intersection of Second Street and Broad Street in Highspire. (Doc. 38, at 69). Officer LeVan authorized Officer Schools to conduct a traffic stop. (Id. at 12). Officer Schools conducted the traffic stop at West Harrisburg Pike and the entrance to Jamesway Plaza, near Mead Road in Lower Swatara. (Id. at 12, 97). The stop took place approximately half a mile outside of the Highspire Borough and within 500 yards of the PSU campus. (Id. at 94-95, 98, Doc. 42).

Officer LeVan arrived approximately one to two minutes after the initial stop. (Doc. 38, at 12, 19, 37-38). Officer LeVan noted a "strong odor of burnt marijuana coming from inside the vehicle." (Id. at 39). Officer LeVan observed that the driver,

---

[1] The court's findings are based upon the court's assessment of the credibility of the testimony and information provided at the June 13, 2012, hearing on the motion.

[2] Officer Schools is trained and certified as a municipal police officer. (Doc. 38, at 4; Doc. 28-1, at 34).

later identified as Rodriguez, was slumped down in his seat and had "glassy" eyes. (Id.) Officer LeVan testified that Rodriguez was mumbling and slurring while speaking. (Id. at 40). When he attempted to retrieve his driver's license from his wallet, Rodriguez appeared to mistake a credit card for the driver's license and actually passed over his license several times. (Id. at 39). Rodriguez never provided Officer LeVan with the vehicle's registration. (Id.)

Eventually, Rodriguez exited the car and Officer LeVan conducted field coordination exercises to determine whether Rodriguez was under the influence of controlled substances. (Id. at 40-43). Rodriguez failed these exercises. (Id.). Indeed, Officer LeVan terminated one of the exercises out of concern that Rodriguez would fall and injure himself. (Id. at 42). Additionally, as Rodriguez exited the car, a dark colored cigarette lighter fell onto the street and Officer LeVan observed a clear plastic cigar "blunt" wrapper lying on the driver's side floor of the vehicle. (Id. at 40). Based upon all of these observations, Officer LeVan placed Rodriguez under arrest for driving under the influence of a controlled substance. (Id. at 44).

Officer LeVan impounded the car to a local towing service. (Id. at 44). Later that day, he obtained a search warrant for the vehicle. (Id. at 45). In his affidavit of probable cause, Officer LeVan stated that he asked Rodriguez, after providing Miranda warnings, if there was anything illegal in the car. Rodriguez responded with a "long drawn out no." (Doc. 28-1, at 22). Officer LeVan subsequently searched the vehicle and seized suspected marijuana, suspected cocaine, a loaded

.40 caliber semiautomatic firearm, a digital scale, and $500 in U.S. currency.  (Doc. 38, at 50-52).

## II.    Procedural History

On January 11, 2012, a grand jury returned a two-count indictment against Rodriguez charging him with: (1) possession with intent to distribute approximately 57 grams of cocaine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. § 841(a)(1); and (2) possession of a firearm and ammunition during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  (Doc. 1).  On January 23, 2012, Rodriguez entered a plea of not guilty.  (Doc. 9).  On March 6, 2012, Rodriguez filed the instant motion to suppress.  (Doc. 21).  The court conducted an evidentiary hearing on the motion on June 13, 2012.  (Doc. 38).  The motion is fully briefed and ripe for disposition.

## III.   Discussion

Rodriguez contends that both the initial stop and subsequent search of his vehicle were unlawful.  He asserts that Officer Schools, as a campus police officer, lacked jurisdiction to perform the initial stop. He also asserts a lack of probable cause to issue a search warrant for his vehicle, and he contends that all evidence gained from the initial stop and subsequent search must be suppressed as "fruit of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471, 488 (1963).

### A.     Jurisdiction for the Vehicle Stop

Rodriguez contends that Pennsylvania law limits Officer Schools' jurisdictional authority to the four corners of the PSU campus. The sole exception

to this statutory limitation is an emergency situation coupled with a request by the mayor of a municipality or other executive authority. In his principal brief, Rodriguez cites 71 P.S. § 646 for this premise. Under this statute, the territorial jurisdiction of campus police was initially limited to campus property. Campus police officers could only provide extra-territorial assistance to municipalities in emergency situations, when requested by the mayor or other executive authority of the municipality, and only under the direction of local law enforcement authorities. However, in 1997, the Pennsylvania General Assembly repealed § 646 "insofar as it is inconsistent" with 71 P.S. § 646.1. Section 646.1 specifically addresses the jurisdiction of "campus police," which are defined as "all law enforcement personnel employed by a State-aided or State-related college or university who have successfully completed a campus police course of training" approved under the Municipal Police Education and Training Act, 53 Pa.C.S. Ch. 21 Subch. D (MPETA). Section 646.1(b). In relevant part, § 646.1(a) provides that such "campus police" now have the authority:

> (5) to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipalities wherein the college or university is located, including, but not limited to, those powers conferred pursuant to 42 Pa.C.S. Ch. 89 Subch. D [the Municipal Police Jurisdiction Act (MPJA)];
>
> (6) to prevent crime, investigate criminal acts, apprehend, arrest and charge criminal offenders and issue summary citations for acts committed on the grounds and in the buildings of the college or university . . . . Except when acting pursuant to 42 Pa.C.S. Ch. 89 Subch. D, campus police shall exercise these powers and perform these

>duties only on the grounds or within 500 yards of the grounds of the college or university. For the purposes of applying the provisions of 42 PA.C.S. Ch. 89 Subch. D, the grounds and within 500 yards of the grounds of the college or university shall constitute the primary jurisdiction of the campus police.

Thus, campus police now have primary jurisdiction over the grounds of the college or university and within 500 yards from those grounds.[3] Campus police are also authorized to enter into cooperative police service agreements with the police of the municipality in which the school is located. 71 P.S. § 646.1(b). These agreements are not limited to emergency situations.

Additionally, campus police now have statewide municipal jurisdiction as defined under the Municipal Police Jurisdiction Act, 42 Pa.C.S.A. Ch. 89 Subch. D. (MPJA). Pennsylvania courts interpret the MPJA liberally in order to achieve its purposes of promoting public safety while maintaining police accountability. Commonwealth v. Lehman, 870 A.2d 818, 820 (2005). The MPJA is not intended to

---

[3] In his reply brief, Rodriguez cites to the Public School Code of 1949, specifically 24 P.S. § 20-2019-A, as binding authority in this case. Section 20-2019-A limits a campus police officer's jurisdiction to the grounds of the institution. However, § 20-2019-A only sets forth the power and authority of campus police for institutional members of the Pennsylvania State System of Higher Education (SSHE). Unlike campus police for state-aided or state-related universities, campus police for SSHE institutions are not required to be certified under MPETA prior to enforcing Pennsylvania law. See 53 Pa.C.S. § 2162 (specifically excluding the SSHE and its institutions from its definitions of "college," "police department," and "university"). PSU is not a member of SSHE but is a state-related institution. See 24 P.S. § 20-2001-D (including PSU and its branch campuses in its definition of a "state-related institution"); 24 P.S. § 20-2002-A(a) (naming the member institutions of the SSHE). Thus, § 20-2019-A does not apply to the instant matter. Officer School's jurisdictional authority is governed by § 646.1 and the other statutes discussed in this memorandum.

create "impenetrable jurisdictional walls benefit[ing] only the criminals hidden in their shadows." Commonwealth v. Merchant, 595 A.2d 1135, 1139 (Pa. 1991). The MPJA provides, in relevant part, that:

> (a) [a]ny duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
> . . .
> (3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

42 Pa.C.S.A. § 8953(a)(3). Thus, under 71 P.S. § 646.1 and the MPETA, a campus police officer still has law enforcement power and authority outside his primary jurisdiction when another law enforcement officer requests his aid or assistance.

Here, Officer Schools is a trained and certified municipal police officer pursuant to the MPETA. (Doc. 38, at 4; Doc. 28-1, at 34). PSU, his employer, is a state-related university. See 24 P.S. § 20-2001-D (including PSU and its branch campuses in its definition of a "state-related institution"). As Officer LeVan testified at the suppression hearing, Officer Schools conducted the traffic stop

7

within 500 yards of the PSU campus. (Doc. 38, at 94-95, 98).[4] Rodriguez did not present any evidence to the contrary. Pursuant to 71 P.S. § 646.1(a)(6), the court finds that Officer Schools conducted the stop within his primary jurisdiction.

Even if Officer Schools was not in his primary jurisdiction, he nevertheless possessed statewide municipal police jurisdiction under the MPJA. Specifically, Officer Schools obtained statewide jurisdiction over Rodriguez, pursuant to § 8953(a)(3), when Officer LeVan requested the stop after Officer Schools relayed his observations of the vehicle within Officer LeVan's primary jurisdiction. See Commonwealth v. Triplett, 564 A.2d 227 (Pa. Super. Ct. 1989); Commonwealth v. Peppers, 515 A.2d 971 (Pa. Super. Ct. 1986). Under Pennsylania law, it is irrelevant that Officer Schools initiated the contact with Officer LeVan. See Commonwealth v. McHugh, 605 A.2d 1265 (Pa. Super. Ct. 1992) (holding that police department had "requested" the assistance of a police officer from another jurisdiction under § 8953(a)(3) even though the officer initiated contact by asking over the radio if he should stop the vehicle that he was pursuing). Similar to the officer in McHugh, Officer LeVan had a choice to engage Officer School's assistance or to decline it.

---

[4] Subsequent to the suppression hearing, Officer Schools provided a signed and sworn affidavit stating that he measured the distance from the grounds of PSU to the approximate location of the traffic stop and that it was well within 500 yards. (Doc. 42).

Officer LeVan requested Officer School's assistance, thereby granting him statewide jurisdiction over Rodriguez pursuant to § 8953(a)(3).[5]

### B.  Probable Cause for the Search Warrant

Rodriguez also contends that Officer LeVan did not possess sufficient probable cause to justify the issuance of a search warrant for the vehicle. Rodriguez states that "[n]either the odor of burnt marijuana, the observance of a clear plastic cigar blunt wrapper, nor the fact that Rodriguez had a cigarette lighter are sufficient indicia of any drug-related criminal activity" that would rise to a finding of probable cause.  (Doc. 23, at 23).  The government counters that Officer LeVan possessed sufficient probable cause and that, in any event, the good faith exception to the Fourth Amendment's exclusionary rule applies.  See United States v. Leon, 468 U.S. 897 (1984).

When determining whether an affidavit of probable cause is sufficient to satisfy the requirements of the Fourth Amendment, a reviewing court must determine whether the issuing judge "had a substantial basis for . . . concluding that probable cause existed."  Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (internal

---

[5] The actual stop took place in Lower Swatara Township, outside of Officer LeVan's jurisdiction.  (Doc. 38, at 97).  However, the events precipitating the stop occurred within Highspire Borough.  Therefore, Officer LeVan, and by extension Officer Schools under § 8953(a)(3), possessed jurisdiction over the vehicle in Lower Swatara under the hot pursuit doctrine.  See 42 Pa. C.S.A. § 8953(a)(2) (providing for statewide jurisdiction "[w]here the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.").

citations omitted); see also United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). In making this determination, the court must give "great deference" to the issuing judge's assessment of probable cause and must consider "the most reasonable reading of the affidavit." Gates, 462 U.S. at 236 (internal citation omitted); United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993).[6]

Probable cause is an amorphous concept. Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." Id. (quoting Gates, 462 U.S. at 232). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981). The dispositive question is whether the investigating officer, with his or her experience and based on the facts then known, could have reasonably concluded that the area to be searched more likely than not contained evidence of a crime. Gates, 462 U.S. at 238.

Contrary to Rodriguez's contentions, Third Circuit jurisprudence has clearly concluded that the odor of burnt marijuana alone, "if articulable and

---

[6] Here, Officer LeVan did not have to obtain a search warrant. Under the automobile exception to the warrant requirement, law enforcement may lawfully search any area of a vehicle in which they have probable cause to believe that evidence of criminal activity will be found. See Arizona v. Gant, 556 U.S. 332, 347 (2009) (citing United States v. Ross, 456 U.S. 798, 819-21 (1982)); California v. Acevedo, 500 U.S. 565 (1991); United States v. Rickus, 737 F.2d 360, 367 (3d Cir. 1984). Additionally, once impounded, law enforcement officers can conduct an inventory search of a vehicle without a warrant or any level of suspicion that a car contains contraband. Colorado v. Bertine, 479 U.S. 367, 373-74 (1987).

particularized," may constitute sufficient probable cause for a vehicle search. See United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006) (noting in *dictum* that the odor of burnt marijuana emanating from a particularized location can provide probable cause for a stop); United States v. Simmons, No. 06-3902, 2007 WL 3122169, at *3 (3d Cir. 2007) (applying Ramos to hold that the odor of marijuana alone emanating from a vehicle provided probable cause for the search of a vehicle); United States v. Ushery, 526 F.Supp.2d 497, 502-503 (M.D. Pa. 2007) (finding that the odor of burnt marijuana emanating from the passenger compartment of the vehicle provided sufficient probable cause to search the entire vehicle); United States v. Nelson, No. 06-240, 2006 WL 2711743, at *4 (E.D. Pa. Sept. 19, 2006) (same); see also United States v. Jenkins, 452 F.3d 207, 214 (2d Cir. 2006) (odor of marijuana emanating from a vehicle provided probable cause to search an automobile); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place"); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (same); Minnick v. United States, 607 A.2d 519, 525 (D.C. Cir. 1992) ("While none of our earlier cases involved a situation in which the distinctive smell of a drug alone provided police officers with probable cause to search, we have no difficulty reaching that conclusion here.").

In the case *sub judice*, Officer LeVan testified that he smelled a "strong odor of burnt marijuana coming from inside the vehicle." (Doc. 38, at 39; Doc. 28-1, at 21). Under existing case law, this observation alone provided Officer LeVan with

11

sufficient probable cause to search the entire vehicle with or without a warrant. However, in addition, Officer LeVan observed a clear plastic cigar blunt wrapper lying on the driver's side floor of the vehicle. (Id. at 40) When Rodriguez exited the car, a cigarette lighter fell onto the street. (Id.) And Officer Schools had already provided Officer LeVan with information regarding Rodriguez's erratic driving. (Id. at 12). Officer LeVan observed Rodriguez's mental confusion when he attempted to locate his driver's license in his wallet. (Id. at 39). He also noticed Rodriguez's slurred speech, dilated pupils, and glassy stare. (Id. at 39-43). Finally, Rodriguez failed a series of field coordination tests designed to determine whether he was under the influence of alcohol or controlled substances. (Id.) All of these factors, along with Officer LeVan's training and experience as an officer in the field, certainly combine to establish sufficient probable cause to believe that evidence of criminal activity or contraband could be found in the vehicle. The search warrant was valid.

Officer Schools and Officer LeVan did not violate Rodriguez's constitutional rights under the Fourth Amendment during the stop or search of Rodriguez's car; therefore, the exclusionary rule does not apply to any evidence obtained as a result of the stop or the search.

**IV.** **Conclusion**

For the foregoing reasons, the motion to suppress (Doc. 21) will be denied. An appropriate order follows.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:      September 5, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**     :     **CRIMINAL NO. 1:12-CR-0005**
:
    **v.**     :     **(Judge Conner)**
:
**DANIEL RODRIGUEZ**     :

## **ORDER**

AND NOW, this 5th day of September, 2012, upon consideration of the motion to suppress evidence (Doc. 21) filed by counsel for defendant Daniel Rodriguez, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to suppress (Doc. 21) is DENIED.

                     S/ Christopher C. Conner
                     CHRISTOPHER C. CONNER
                     United States District Judge