# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | CRIMINAL NO. 1:12-CR-5 |
| : | |
| v. : | **(Chief Judge Conner)** |
| : | |
| **DANIEL RODRIGUEZ**, : | |
| : | |
| **Defendant** : | |

## **MEMORANDUM**

The court sentenced defendant Daniel Rodriguez ("Rodriguez") to 72 months' imprisonment after a jury convicted him of distribution of and possession with intent to distribute cocaine and possession of a firearm in furtherance of drug trafficking. (Doc. 121). Presently before the court is Rodriguez's *pro se* motion (Doc. 144) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Rodriguez asserts that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Rodriquez has also filed a motion (Doc. 159) seeking appointment of counsel. The court will deny Rodriguez's § 2255 motion on its merits and will deny his motion to appoint counsel as moot.

**I.    Factual Background & Procedural History**

On January 11, 2012, a grand jury returned an indictment charging Rodriguez with distribution of and possession with intent to distribute approximately 57 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 2). (Doc. 1). Rodriguez initially pled not guilty. (Doc. 11). On January 24, 2012, the court appointed Terrence J. McGowan, Esquire ("trial counsel" or "Attorney McGowan") to represent Rodriguez. (Doc. 20).

Rodriguez, through trial counsel, filed a motion (Doc. 21) to suppress evidence. Rodriguez asserted that certain law enforcement officers violated Pennsylvania law because they conducted a traffic stop of his vehicle outside their respective jurisdictions, requiring the court to exclude the evidence obtained from the stop pursuant to the "fruit of the poisonous tree" doctrine. (See id.; see also Doc. 24 at 14-19). The court conducted an evidentiary hearing on the motion, (Doc. 36), and denied same in a memorandum opinion dated September 5, 2012. United States v. Rodriguez, No. 12-CR-5, 2012 WL 3864427 (M.D. Pa. Sept. 5, 2012).

Rodriguez pled guilty to Count 2 of the indictment on December 3, 2012 pursuant to a written plea agreement. (Docs. 61, 64, 65). The Rule 11(c)(1)(C) plea agreement contemplated a binding sentencing recommendation of 50 months' imprisonment. (Doc. 61). The court rejected the sentencing recommendation, which fell below the statutory mandatory minimum sentence, and allowed Rodriguez to withdraw his initial guilty plea. (Doc. 116 at 3:14-5:15). Rodriguez executed a second Rule 11(c)(1)(C) plea agreement, this time indicating a desire to plead guilty to Count 1. (Doc. 69). During the change of plea hearing, Rodriguez expressed substantial hesitation in light of newly discovered evidence relating to his suppression argument, and the court declined to accept his plea. (Doc. 116 at 15:12-21:24). At trial counsel's request, the court reopened the record and convened another suppression hearing on March 27, 2013. (Docs. 74-77). The court confirmed its denial of Rodriguez's motion on May 29, 2013. United States v. Rodriguez, No. 12-CR-5, 2013 WL 2338485 (M.D. Pa. May 29, 2013).

The court conducted a two-day jury trial on June 4 and 5, 2013, during which the parties elicited the following facts. (Docs. 127-28). On April 2, 2011, Officer Arlon Schools, a police officer employed at Pennsylvania State University, observed a vehicle swerve into the center left turn lane without using a turn signal, swerve back into the right travel lane without using a turn signal, and then straddle the "fog line" on Route 230 in Highspire, Pennsylvania. (Doc. 128 at 4:19-6:13). Officer Schools communicated his observations over radio to Officer Timothy Wells of the Lower Swatara Township Police Department. (See Doc. 128 at 6:16-8:5). Officer Jeffrey LeVan of the Highspire Police Department was parked near Officer Wells when Officer Wells received Officer Schools' message. (Doc. 127 at 106:21-108:20). During trial, Officer LeVan explained that he listened to Officer Schools' message over Officer Wells' radio. (Id. at 145:24-148:9).

Officer LeVan, in his capacity as a police officer employed in Highspire, authorized Officer Schools to stop the vehicle. (Id. at 108:17-20). After initiating the traffic stop, Officer Schools approached the vehicle, whereupon the driver (Rodriguez) partially opened the driver side window. (Doc. 128 at 8:17-22). Officer Schools detected the scent of burnt marijuana emanating from the vehicle and asked Rodriguez for his driver's license. (Id at 8:22-25). Officer Schools observed that Rodriguez's eyes appeared glassy and his speech was slurred. (Id. at 9:6). Rodriguez furnished a bank card to Officer Schools when asked for identification. (Id. at 9:6-9).

Officers LeVan and Wells arrived shortly thereafter, and Officer LeVan conducted the remainder of the stop. (Id. at 9:1-2). Officer LeVan also noted

3

Rodriguez's reddened and glassy eyes and slurred speech. (Doc. 127 at 109:19-110:2). When Officer LeVan requested Rodriguez's identification, Rodriguez again produced his bank card. (Id. at 110:7-15). After personally retrieving Rodriguez's wallet and identification, Officer LeVan asked Rodriguez to participate in several field sobriety exercises. (Id. at 110:7-15, 111:17-21). Rodriguez agreed and, after watching Officer Levan demonstrate the exercises, failed each of them. (See id. at 112:13-115:14). A video from Officer LeVan's dashboard camera memorializes the interaction between the officers and Rodriguez. (See id. at 115:19-116:21).[1]

      Officer LeVan placed Rodriguez under arrest. (Id. at 122:2-4). Law enforcement then impounded Rodriguez's vehicle and towed it to a local garage. (See id. at 124:6-14, 132:9-133:1). Officer LeVan did not conduct an inventory search immediately upon impounding the vehicle, but instead left the vehicle in the garage before driving Rodriguez to Harrisburg Hospital to conduct a blood draw. (See id. at 134:15-135:10). The operator of the garage parked the vehicle, activated the garage's alarm, and locked the doors before leaving the garage. (Doc. 128 at 74:7-75:6). The operator returned the following day to permit Officer LeVan to serve a search warrant on Rodriguez's vehicle. (Id. at 75:7-13). Officer LeVan searched Rodriguez's vehicle while the operator was in the garage. (Id. at 75:20-76:25). The operator testified that no one had entered the garage in the intervening hours and that the alarm did not activate, but the operator conceded that he never actually watched the surveillance footage and that his employees know how to disarm the

---

[1] The existing audio recording was largely unintelligible, but the court nevertheless permitted Attorney McGowan to offer any understandable audio as evidence. (Id. at 125:16-129:8).

4

alarm system. (Id. at 75:14-19, 79:6-8, 83:2-14). The footage of Rodriguez's vehicle was overwritten in the normal course of business. (Id. at 82:15-83:1).

Officer LeVan's search yielded several items, to wit: a tan suede jacket, an advertisement for tax preparation services bearing Rodriguez's name, tax records belonging to Rodriguez, a work order for a vehicle containing Rodriguez's name, a tin pipe used for smoking marijuana, several clear plastic baggies, bags containing crack cocaine and marijuana, a partially burnt marijuana cigarette, $500 in cash, an unused kitchen scale, and a .40 caliber HK pistol. (Doc. 127 at 136:14-142:1). The government introduced no fingerprint evidence linking Rodriguez to the contents of his vehicle and conceded that the scale and empty baggies Officer LeVan found contained no traces of drug residue. (Id. at 180:14-181:25).

The government read the following stipulations into the record: *first*, that the firearm was stolen but that no evidence implicates Rodriguez in the theft; *second*, that the Pennsylvania State Police crime laboratory confirmed the substances Officer LeVan found in Rodriguez's vehicle were marijuana and crack cocaine; *third*, that Rodriguez did not maintain a license to carry a concealed firearm; *fourth*, that Rodriguez's blood draw indicated he had used marijuana within 12 hours of the test; and *fifth*, that the firearm Officer LeVan found in Rodriguez's vehicle was fully operable. (Id. at 140:25-143:22). During closing arguments, the government stated, *inter alia*, that "[t]here is nothing more dangerous than an armed drug dealer with a gun driving through a neighborhood after midnight and before sunrise." (Doc. 128 at 137:14-16).

5

The jury convicted Rodriguez on both counts. (Doc. 111). On January 21, 2014, the court sentenced Rodriguez to 12 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2, to be served consecutively. (Doc. 121). Rodriguez appealed to the United States Court of Appeals for the Third Circuit, which affirmed the judgment of conviction and sentence on January 28, 2015. United States v. Rodriguez, 597 F. App'x 713 (3d Cir. 2015) (nonprecedential); (Doc. 134). Rodriguez then filed a petition for rehearing, which the Third Circuit denied on April 27, 2015. (Doc. 138). Rodriguez filed the instant motion (Doc. 144) to vacate, set aside, or correct his sentence on July 7, 2016 and a motion (Doc. 159) to appoint counsel on October 11, 2016. The motions are fully briefed and ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under § 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a); see also R. GOVERNING § 2255 CASES R.1(a). The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A

6

court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate, first, that trial counsel's representation fell below an objective level of reasonableness based on prevailing professional norms and, second, that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have

7

been different.  See Strickland, 466 U.S. at 693.  The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III.   Discussion

Rodriguez submits that he was denied effective trial counsel in violation of the Sixth Amendment.  (See generally Doc. 144).  He advances eight arguments concerning trial counsel's purportedly deficient performance.  (Id.; Doc. 162 at 3).  The court will examine Rodriguez's contentions *seriatim*.

#### A.   Failure to Challenge Officer Schools' Initial Stop

Rodriguez contends trial counsel failed to argue that Officer Schools lacked authority to conduct a stop outside his primary jurisdiction.  (Doc. 146 at 1).[2]  The record flatly refutes Rodriguez's asseveration.  The parties litigated Officer Schools' authority to stop Rodriguez's vehicle *in extenso* in Rodriguez's first attempt to suppress evidence.  (See, e.g., Doc. 23 at 6-18; Doc. 28 at 11-25; Doc. 32 at 2-9).  The court thoroughly explored the issue in its initial opinion on Rodriguez's motion to suppress.  United States v. Rodriguez, 2012 WL 3864427, at *2-*4.  Trial counsel again raised the question of Officer Schools' authority in a second hearing on the motion to suppress on January 29, 2013.  (See Doc. 74).  The court subsequently denied trial counsel's motion.  United States v. Rodriguez, 2013 WL 2338485, at *3.  The propriety of the stop was also the subject of lengthy questioning at trial.  (See

---

[2] Rodriguez also appears to claim that trial counsel failed to challenge the proposed justification of the initial stop.  The court will not address the issue of justification as Rodriguez's allegation is "quite conclusory and too vague to warrant further investigation."  Thomas, 221 F.3d at 437.

8

Doc. 127 at 151:2-154:12; Doc. 128 at 14:7-17:17). Trial counsel zealously pursued Rodriguez's suppression argument. See Strickland, 466 U.S. at 689; Gray, 878 F.2d at 710. We reject this ground for relief.

### B. Failure to Challenge Affidavit of Probable Cause

Rodriguez avers that trial counsel failed to challenge 28 prejudicial aspects of the affidavit of probable cause. (Doc. 146 at 2-9). Rodriguez proffers two general arguments concerning the affidavit: (1) the sequence of events described in the affidavit was factually inaccurate, and (2) incomprehensibility of the audio recording prejudiced Rodriguez's arguments relating to Officer LeVan's credibility as an affiant. (See id.)

We have previously concluded that Officer LeVan's testimony regarding the scent of burnt marijuana emanating from Rodriguez's vehicle was *ipso facto* sufficient to establish probable cause. Rodriguez, 2012 WL 3864427, at *5 (quoting United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006)). We also found that several other facts bolstered the probable cause determination, including, *inter alia*, the cigarette lighter falling from Rodriguez's vehicle, his erratic driving, his confusion when asked to present identification, his physical characteristics (such as glassy eyes and slurred speech) at the time of the stop, and his inability to satisfactorily complete field sobriety exercises. (Id. at 12).

Rodriguez broadly claims that Officer LeVan fabricated several of the statements underlying the affidavit of probable cause. (Doc. 146 at 3-6). But trial counsel carefully examined the factual narrative underlying the affidavit at Rodriguez's suppression hearings. (See, e.g., Doc. 50 at 65:3-70:14; Doc. 86 at 66:20-

9

79:5). He oppugned the officers' credibility throughout the course of the proceedings.³ Rodriguez accordingly fails to demonstrate that trial counsel did not provide effective professional assistance in challenging the existence of probable cause. The court will dismiss Rodriguez's arguments on this ground as he has failed to satisfy the first Strickland prong.

### C. Failure to Request Franks Hearing

Rodriguez's third argument concenters upon trial counsel's ostensible failure to request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). (Doc. 146 at 10). In Franks, the Supreme Court of the United States concluded that criminal defendants may challenge material factual statements undergirding an affidavit of probable cause. See Franks, 438 U.S. at 155-56; see also United States v. Yasuf, 461 F.3d 374, 383-84 (3d Cir. 2006). Courts generally presume the validity of affidavits of probable cause. See Yasuf, 461 F.3d at 383. Criminal defendants may overcome the presumption if they "make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." Id. (quoting Franks, 438 U.S. at 171). If the defendant satisfies this requirement, the court must conduct a Franks hearing. See id.

Rodriguez asserts that trial counsel failed to request a Franks hearing and thus failed to test the veracity of the arresting officers' official narrative. *A contrario*, trial counsel raised several challenges to Officer LeVan's credibility and

---

³ (See Doc. 50 at 17:13-32:3, 63:20-65:2, 72:6-80:16, 81:10-92:4, 93:20-97:2, 104:13-106:12; Doc. 86 at 14:1-42:9, 44:21-45:3, 52:24-67:19, 69:19-83:25; Doc. 127 at 144:25-169:7, 170:19-191:6, 195:24-197:2; Doc. 128 at 10:30-24:9, 30:3-36:24, 51:25-55:5).

10

the facts underlying the affidavit of probable cause throughout the instant litigation. We agree with the government that, although not styled as a formal Franks hearing, trial counsel's endeavors in the two suppression hearings *sub judice* fully satisfied the purpose of a Franks examination. Trial counsel asked the court to consider the officers' credibility, and we concluded that despite inconsistencies in the officers' testimony concerning events leading to the traffic stop, their testimony regarding what transpired during the stop was credible. See Rodriguez, 2013 WL 2338485, at *3. We conclude that trial counsel effectively pursued Franks-related inquiries in both pretrial hearings. See Strickland, 466 U.S. at 689.

**D.      Failure to Play Video Evidence During Suppression Hearings**

Rodriguez asserts that trial counsel's failure to play the traffic stop video during the suppression hearings constitutes ineffective assistance. (Doc. 146 at 11). Trial counsel submitted the video into evidence despite never playing the video during the hearings. (See Doc. 50 at 57:6-17, 106:17-22). The court independently reviewed the video upon trial counsel's request and explicitly referenced it in the second opinion regarding Rodriguez's motion to suppress. Rodriguez, 2013 WL 2338485, at *3 n.2. These facts vitiate Rodriguez's allegation that trial counsel failed to properly present the video evidence to the court. Rodriguez fails to satisfy the first prong of the Strickland inquiry on this ground.

**E.      Failure to Challenge Chain of Custody and Stipulations**

Rodriguez claims that trial counsel failed to adequately address issues concerning the chain of custody of his vehicle while it remained in the garage overnight, and that trial counsel should have argued that "any person with

malicious . . . intent had the freedom and opportunity to come into the location of the impounded vehicle and plant and remove its contents." (Doc. 146 at 13). Rodriguez also contends that Attorney McGowan inappropriately agreed to a stipulation concerning the drugs Officer LeVan found in the vehicle. (Id.)

The Third Circuit has concluded that missing links in a chain of custody do not categorically preclude admission of evidence at trial. United States v. Rawlins, 606 F.3d 73, 82-83 (3d Cir. 2010) (citations omitted). Gaps in the chain of custody impede admission only when said chain is profoundly deficient. Id. (quoting United States v. Mejia, 597 F.3d 1329, 1336 (D.C. Cir. 2010)). Chain of custody issues ordinarily go to weight but not admissibility of evidence. Id. (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009)).

Trial counsel addressed the vehicle's chain of custody at several junctures throughout trial. Attorney McGowan vigorously cross-examined Officer LeVan and the operator of the garage about storage of the vehicle, Officer LeVan's search, and whether the general public could access the garage while Rodriguez's vehicle was parked there unattended. (Doc. 127 at 184:2-191:6; Doc. 128 at 78:4-83:14, 84:22-85:15). Attorney McGowan also presented a witness who testified that employees had liberal access to the garage. (Doc. 128 at 78:16-79:8). Trial counsel's robust efforts to scrutinize the chain of custody gainsay Rodriguez's claims of ineffective assistance.

Rodriguez's arguments pertaining trial counsel's stipulation with the government are similarly unavailing. Rodriguez maintains that Attorney McGowan's decision to agree to the government's stipulation caused "extreme

prejudice," but also seemingly concedes that the stipulation served the legitimate purpose of avoiding the costs of requiring experts to travel to trial. (See Doc. 146 at 12-13). Rodriguez fails to articulate how refusal to stipulate to the lab reports' admissibility would have altered the outcome of his trial. See Strickland, 466 U.S. at 693-94. The court independently discerns no potential prejudice to Rodriguez. We will deny Rodriguez's motion on this ground.

### F. Failure to Raise Constructive Possession Arguments

Rodriguez also contends that trial counsel failed to argue or present evidence that items found in his vehicle did not belong to him. (Doc. 146 at 14-15). Rodriguez's own citations to the trial transcript belie this claim. (See id.) Trial counsel argued that the items Officer LeVan found in the vehicle did not belong to Rodriguez. (See id.; see also Doc. 127 at 179:5-181:25, 188:4-191:6). Counsel questioned Officer LeVan about the absence of fingerprints on the evidence found in Rodriguez's vehicle, including the packaging on the drug scale, and the lack of surveillance footage of the garage while Rodriguez's vehicle was parked inside. (Doc. 127 at 179:5-181:25, 188:4-191:6). In light of this questioning, the court cannot conclude that trial counsel's performance fell outside the "wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689.

### G. Failure to Object to Prosecutorial Misconduct During Closing Arguments

Rodriguez's penultimate argument concerns trial counsel's purported failure to dispute several instances of prosecutorial misconduct. (Doc. 146 at 16-17). He asserts that the government improperly: vouched for its own witnesses; characterized Rodriguez as a drug dealer; stated that "[t]here is nothing more

13

dangerous than an armed drug dealer with a gun driving through a neighborhood after midnight"; contested the defense's theory that Officer LeVan personally placed illicit items in Rodriguez's vehicle; and offered a purportedly inaccurate statement describing the firearm and drugs in Rodriguez's vehicle. (Id.)

Section 2225 is not a tool to relitigate questions that were raised on direct appeal. See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)); United States v. Gassew, 42 F. Supp. 3d 686, 698 (E.D. Pa. 2014). The Third Circuit has squarely addressed and resolved this argument on direct appeal. Rodriguez, 597 F. App'x at 715-16. The court will deny Rodriguez's motion on this ground.

### H.    Failure to Challenge Length of Traffic Stop

Rodriguez lastly oppugns Attorney McGowan's failure to challenge the length of the traffic stop. (Doc. 162 at 3). As a threshold matter, the court notes that Rodriguez raised this argument for the first time in his reply brief, (see id.), filed well outside the one-year filing deadline for § 2255 claims. (See Docs. 147, 162); see also Mayle v. Felix, 545 U.S. 644, 648 (2005) (citing 28 U.S.C. § 2244(d)(1)). The court may consider claims filed following an initial § 2255 motion and after the one-year window if the additional claims "relate back" to the original motion. See Mayle, 545 U.S. at 656-57. Relation back occurs if the two sets of claims share a "core of operative facts uniting the original and newly asserted claims" which are close in "time and type" to the facts underlying the original motion. Id. at 650, 657-59. Erring on the side of caution, we conclude that the claim raised in Rodriguez's reply brief relates back to his original motion and will consider it herein.

14

An otherwise permissible traffic stop may violate the Fourth Amendment if law enforcement unreasonably prolongs the stop. Illinois v. Caballes, 543 U.S. 405, 407 (2005) (citing United States v. Jacobsen, 466 U.S. 109, 124 (1984)). The permissible length of a traffic stop is context specific. See Rodriguez v. United States, 575 U.S. __, 135 S. Ct. 1609, 1614 (2015) (citations omitted). The court must consider the "mission" of the traffic stop, as well as any related safety concerns or activities incident to the stop, when evaluating whether law enforcement takes an unreasonable amount of time to complete the stop. Id. at 1614-15. Officers lose the authority to continue a stop "when tasks tied to the traffic infraction are— or reasonably should have been—completed." Id. at 1614 (citing United States v. Sharpe, 470 U.S. 675, 686 (1985)).

Rodriguez claims that his traffic stop lasted approximately 40 minutes and that law enforcement held him in custody for several hours after the initial stop. (Doc. 162 at 3). He ostensibly contends that this intrusion was unreasonable and that trial counsel should have challenged the length of the stop. (Id.) During trial, the government established that Officer Schools initiated the stop at 5:07 a.m. on April 2, 2011. (Doc. 127 at 79:1-6, 90:20-91:5). Officers LeVan and Wells arrived at the scene within minutes. (Id. at 93:3-95:10). The stop concluded at approximately 5:39 a.m., when Officer LeVan brought Rodriguez to Harrisburg Hospital. (Id. at 94:24-95:16). The totality of the stop lasted between 30 and 40 minutes before Officer LeVan placed Rodriguez under arrest. (See id.)

The court concludes that the duration of the stop was entirely reasonable. Testimony establishes that the *totality* of the stop lasted fewer than 40 minutes,

15

during which time officers conducted appropriate preliminary inquiries to "effectuate" the mission of the stop. See Rodriguez, 135 S. Ct. at 1614. As a result of these initial observations—including Rodriguez's glassy eyes and slurred speech and the odor of burnt marijuana—officers properly extended their stop to include several field sobriety exercises. Id. at 1616-17; (see also Doc. 128 at 110:8-15, 111:17-21, 112:13-115:14). This minor extension of the stop was thus "independently supported by individualized suspicion." Rodriguez, 135 S. Ct. at 1616. Attorney McGowan was not ineffective for failing to pursue a meritless argument. Sanders, 165 F.3d at 253. The court will deny Rodriguez's motion on this ground.

## IV. Conclusion

The court will deny Rodriguez's motion (Doc. 144) to vacate, set aside, or correct his sentence, and will deny Rodriguez's motion (Doc. 159) to appoint counsel as moot. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: November 21, 2017